**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| TORO INTERNATIONAL, LLC dba OUT IN COLOMBIA AND Q TOURS LLC, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**COMPLAINT**

1.      Plaintiff Boy Scouts of America ("Boy Scouts") has operated for over 100 years and owns numerous famous Scout and Scouting trademarks, and most of which are incontestable under 15 U.S.C. § 1065. Boy Scouts seeks to stop Defendants Toro International, LLC dba Out In Colombia ("Toro") and Q Tours LLC ("Q Tours") (collectively, the "Defendants") from infringing and diluting Boy Scouts' famous trademarks and falsely associating with Boy Scouts. Defendants are using Boy Scouts' trademarks without authorization in connection with social entertainment events, guided tours, among other services, including on their websites and social media accounts, and in connection with advertising and marketing, which falsely associates Defendants with Boy Scouts and Boy Scouts' famous trademarks. Toro filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the infringing mark QUEER SCOUT (the "Infringing Mark"). Boy Scouts opposed the application at the Trademark Trial and Appeal Board ("TTAB"). Despite Defendants' actual knowledge of Boy Scouts' registered trademarks and Boy Scouts' prior rights to its famous SCOUT Marks, Defendants began and have continued using the Infringing Mark in connection with similar services.

1

2. Defendants' conduct constitutes trademark infringement, false designation of origin, unfair competition, and trademark dilution under the Lanham Act, among other causes of action.

3. For over 100 years, Boy Scouts has operated one of the premier youth organizations in the United States, authorized by the U.S. Congress with special statutes, and has developed substantial goodwill symbolized by famous and incontestable SCOUT and SCOUTING marks, including the family of SCOUT and SCOUTING formative marks (collectively, "SCOUT Marks").[1]

4. Toro's trademark application for the Infringing Mark was filed under Application Serial No. 97825971 (the "Infringing Application"). Upon publication of the Infringing Application, and given the resulting risk of confusion and dilution to Boy Scouts' famous SCOUT Marks, Boy Scouts filed a Notice of Opposition with the TTAB on May 8, 2024, under U.S. Trademark Opposition Number 91291363 (the "Opposition Proceeding"), opposing registration of the Infringing Mark.

5. During the Opposition Proceeding, Toro confirmed that the Infringing Mark is in use in United States commerce by Q Tours pursuant to a trademark license.

6. Despite its numerous attempts to resolve the Opposition Proceedings and avoid the need for litigation, Defendants have refused to cease use of the Infringing Mark, leaving Boy Scouts with no choice but to seek Court intervention to protect its famous SCOUT Marks and stop Defendants' false association, infringement, and unlawful actions.

7. Accordingly, Boy Scouts seeks relief from this Court.

---

[1] The SCOUT and SCOUTING formative marks used by Boy Scouts are comprised of and/or include the terms "scout," "scouts," and/or "scouting," as further described herein.

## I.    THE PARTIES

8.    Boy Scouts is a congressionally chartered nonprofit corporation domiciled under the laws of the District of Columbia, with its principal place of business at 1325 West Walnut Hill Lane, Irving, TX 75038.

9.    Upon information and belief, Toro International LLC dba Out in Colombia Travel is an Arizona limited liability company, with an address at 7239 S 47th Place, Phoenix, AZ 85042. Toro International LLC is owned by Samuel Thomas Holdren.

10.    Upon information and belief, Q Tours is an Arizona limited liability company, with an address at 7239 S 47th Place, Phoenix, AZ 85042. Q Tours is owned by Samuel Thomas Holdren.

## II.    STATUTORY BASIS AND NATURE OF ACTION

11.    This action is for: (1) trademark infringement under 15 U.S.C. § 1114(a) (Lanham Act § 32(a)); (2) false designation of origin under 15 U.S.C. § 1125(a); (3) unfair competition under 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); (4) trademark dilution under 15 U.S.C. § 1125(c) (Lanham Act § 43(c)); (5) violation of 36 U.S.C. § 30905 (asserting Boy Scouts' exclusive rights to emblems, badges, marks, and words); (6) unfair competition under Texas Business and Commerce Code § 17.46 (V.T.C.A., Bus. & C. § 17.46); (7) trademark dilution under Texas Business and Commerce Code § 16.29 (V.T.C.A., Bus. & C. § 16.29); and (8) common-law trademark infringement and unfair competition.

12.    Boy Scouts seeks injunctive relief, and an award of damages, among other remedies.

## III.    JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction to hear and determine this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Lanham Act.

*See* 15 U.S.C. §§ 1051, *et seq.*

14.     This Court has supplemental jurisdiction to hear and determine the state law claims, which arise under the statutory laws of the state of Texas, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

15.     Venue and personal jurisdiction are proper in the Northern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

16.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants have committed, and continue to commit, acts of infringement in the Northern District of Texas and Defendants have purposefully directed infringing conduct at consumers and Plaintiff in the State of Texas, which has caused and continues to cause Plaintiff harm in the State of Texas and this judicial district.

## IV.     FACTUAL BACKGROUND

### A.     Boy Scouts' Organization and Members

17.     Boy Scouts was formed in 1910, chartered by the U.S. Congress in 1916, and has continuously operated as one of the premier youth development organizations in the United States since its inception.

18.     Boy Scouts' mission is to prepare young people to make ethical and moral choices

over their lifetimes by instilling in them the values of the Scout Oath[2] and Law.[3] The mission is integrated into its programs with the objectives of character development, leadership development, citizenship training, personal fitness, voluntary service and charitable work.

19.    Boy Scouts offers educational programs and activities on many subjects, including those related to nature, outdoor survival, sports, crafts, science, trades, business, leadership, and future careers, and in the case of the Scouts BSA program, Scouts can earn merit badges in connection with same.

20.    Boy Scouts' programs and activities focus on allowing youth character development, leadership development, citizenship training, and personal fitness.

21.    Since its inception, outdoor educational programs and activities such as backpacking, camping, hiking, and orienteering, among others, have been a central focus of Boy Scouts.

22.    Boy Scouts offers its programs, and provides goods and services, in all fifty states of the United States and its territories.

23.    Since its founding in 1910, approximately 130 million youth have participated in Boy Scouts' programs.

24.    Millions of adult volunteers have also helped carry out Boy Scouts' mission.

25.    Boy Scouts currently engages approximately one million children and youths, ages 5 to 21, across the United States and its territories.

26.    Further, Boy Scouts has approximately 500,000 adult volunteers across tens of

---

[2] **Scout Oath:** On my honor I will do my best to do my duty to God and my county and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight.
[3] **Scout Law:** A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent.

thousands of units, overseen by more than 230 local councils throughout the United States and its territories.

27.    Boy Scouts is committed to welcoming all eligible youth and adult members and to ensuring that every member has the opportunity to participate in a local unit consistent with their values. Boy Scouts teaches youth to be helpful, friendly, courteous, and kind to all, and to respect those whose beliefs may differ from their own. Prejudice, intolerance, and unlawful discrimination have no place in Boy Scouts. By focusing on inclusion and the shared goals that unite its members, Boy Scouts works to serve youth and help them grow into strong, responsible citizens who positively contribute to their communities.

28.    Due to Boy Scouts' prominence over more than 100 years, the extensive membership of past and present Boy Scouts, and the large number of consumers that have purchased or used its goods, programs, and services, along with extensive advertising, promotion and press coverage, Boy Scouts' names and marks, including the entire family of SCOUT Marks, have become famous and are recognized by the public as exclusively identifying Boy Scouts and its members, goods, programs, and services.

**B.    Boy Scouts' Famous Marks**

29.    Boy Scouts adopted and began using marks incorporating the term "SCOUT" as early as 1910.

30.    Boy Scouts has various programs for youth, which include CUB SCOUTS, SCOUTS BSA, and SEA SCOUTS, and VENTURING, and which, in addition to the names and ranks "Boy Scouts of America", "BOY SCOUT", "EAGLE SCOUT", "SCOUTS", "SCOUT", and "SCOUTING" are well-known and famous names and identities of Boy Scouts.

31.    Among its numerous intellectual property rights, Boy Scouts is the owner of the following U.S. trademark, service mark, and collective membership mark registrations, which are

6

part of the family of SCOUT Marks (collectively, "Registered SCOUT Marks"):

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| SCOUT | 4865183 | Dec. 8, 2015 |
| SCOUTS BSA | 6957841 | Jan. 17, 2023 |
| SCOUTS BSA | 7626600 | Dec. 24, 2024 |
| ESCOUTS | 6991611 | Feb. 28, 2023 |
| BOY SCOUTS OF AMERICA | 1215939 | Nov. 9, 1982 |
| BOY SCOUTS OF AMERICA | 1363872 | Oct. 1, 1985 |
| BOY SCOUTS OF AMERICA | 1725084 | Oct. 20, 1992 |
| CUB SCOUTS | 1215938 | Nov. 9, 1982 |
| CUB SCOUTS | 1701404 | Jul. 21, 1992 |
| CUB SCOUTS | 1702357 | Jul. 21, 1992 |
| EAGLE SCOUT | 3877547 | Nov. 16, 2010 |
| SEA SCOUTS | 2578122 | Jun. 11, 2002 |
| STEM SCOUTS | 4653974 | Dec. 9, 2014 |
| SCOUTING | 1197851 | Jun. 15, 1982 |
| SCOUTING FOR FOOD | 3390896 | Mar. 4, 2008 |
| SCOUTING FOR ADVENTURE | 3638293 | Jun. 16, 2009 |
| SCOUTINGU | 4697053 | Mar. 3, 2015 |
| MY.SCOUTING | 4742244 | May 26, 2015 |
| FRIENDS OF SCOUTING | 5516899 | Jul. 17, 2018 |
| SCOUTING WIRE | 7292723 | Jan. 30, 2024 |
| SCOUTMASTER | 1695120 | June 16, 1992 |

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| SCOUTWEAR | 4731652 | May 5, 2015 |
| SCOUTCAST | 5024959 | Aug. 23, 2016 |
| SCOUT LIFE | 6931278 | Dec. 20, 2022 |
| | 3988794 | Jul. 5, 2011 |
| | 1213650 | Oct. 19, 1982 |
| VENTURING | 2298890 | Dec. 7, 1999 |

32.    True and correct copies of the certificates of registration for the Registered SCOUT Marks are attached as **Exhibit A**.

33.    The Registered SCOUT Marks are valid, subsisting, and in full force and effect, and constitute evidence of the validity of the Registered SCOUT Marks, Boy Scouts' ownership of those marks, and Boy Scouts' exclusive right to use those marks in commerce in connection with the identified collective memberships, goods and services under Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b).

34.    The Registered SCOUT Marks are incontestable[4] under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus constitute conclusive evidence of their validity and Boy Scouts' ownership thereof.

35.    Boy Scouts is also the owner of common law rights resulting from its continuous and extensive use for decades of its marks, names, symbols and designs in connection with its

---

[4] Other than SCOUTING WIRE (Reg. No. 7292723), SCOUT LIFE (Reg. No. 6931278), SCOUTS BSA (Reg. No. 6957841), and SCOUTS BSA (Reg. No.7626600), which are registered but not yet incontestable.

various goods, programs, and services, and which are part of the family of SCOUT Marks (collectively, "Boy Scouts' Common Law Scout Marks").

36.    Boy Scouts' Common Law Scout Marks include, without limitation, the following: (a) the trade names and marks BOY SCOUTS OF AMERICA, CUB SCOUTS, SCOUTS BSA, SEA SCOUTS, SCOUTS, SCOUTERS, and SCOUTING, as used in connection with Boy Scouts' organization, membership, programming and promotion of the organization and programs; (b) SCOUT and EAGLE SCOUT as used in connection with rank, and (c) the marks BOY SCOUTS OF AMERICA, CUB SCOUTS, SEA SCOUTS, EAGLE SCOUT,  FOX PATROL, and WOLF PATROL as used with, inter alia, services of providing programing, activities and education related to volunteerism, leadership, community service, charitable work, outdoor survival, sports, crafts, science, trades, business and future careers.

37.    The Boy Scouts' Common Law Scout Marks have been continuously and extensively used in commerce by Boy Scouts and are distinctive or have obtained secondary meaning well before Defendants' infringing conduct.

38.    Further, Boy Scouts' prominently uses names and images of animals figures in connection with its membership, ranks, goods, and services. For example, Boy Scouts' uses names and images of animals such as that of a Tiger, Wolf, Lion, and Bear for ranks:



(see **Exhibit B**), and a Fox for Scout patrols:



(see **Exhibit C**). Such names and images, including use of foxes, are thus part of Boy Scouts' Common Law Scout Marks used in connection with Boy Scouts' organization, membership, programming and promotion of the organization and its programs, goods, and services, and have been continuously and extensively used in commerce by Boy Scouts and are distinctive or have obtained secondary meaning well before Defendants' infringing conduct.

39.     Boy Scouts' SCOUT Marks constitutes a family of marks, registered and unregistered, that include the terms "SCOUT," "SCOUTS," and/or "SCOUTING," and which family of SCOUT Marks has been used and promoted in such a way as to create a public perception of a family of SCOUT Marks that are distinctive as to Boy Scouts' names, members, programs, goods and services.

40.     In 1916, the United States Congress protected the marks and names of Boy Scouts. Recognizing the need for protection for Boy Scouts, the U.S. Congress passed a special act (Pub L. 64-94, amended by Pub L. 88-504, now restated and codified at 36 U.S.C. §§ 30901 *et seq*.) that granted Boy Scouts exclusive rights to use their marks and designations.

41.     Federal Courts and the USPTO have also acknowledged the exclusive rights of Boy Scouts to prevent others from infringing on its marks and designations.

42.     Boy Scouts' SCOUT Marks have built up extensive goodwill throughout the United States, and in particular in this judicial district and Texas where Boy Scouts is headquartered.

43.     Boy Scouts' SCOUT Marks are distinctive and recognized by the consuming public as a designation of membership in Boy Scouts and a designation of source for Boy Scouts' goods,

programs, and services.

44.     Members of youth organizations and the consuming public have come to recognize any mark or name incorporating the terms "SCOUT," "SCOUTS," and/or "SCOUTING," as used in connection with goods, programs, membership and services similar or related to those of Boy Scouts, as originating or being associated with Boy Scouts.[5]

45.     Due to Boy Scouts' longtime and expansive use of its SCOUT Marks, the family of marks is strong and Boy Scouts' rights over these marks are expansive as the public would and does associate the family of SCOUT Marks with Boy Scouts.

46.     Boy Scouts has operated continuously for more than 115 years, during which time approximately 130 million Americans have participated in its programs. Boy Scouts is the largest scouting organization and one of the largest youth organizations in the United States. Thus, through more than a century of continuous and exclusive use in commerce, extensive advertising and promotion, and widespread public recognition as symbols of youth development, character building, and community service, the SCOUT Marks have become among the most well-known and distinctive marks in the United States. The SCOUT Marks are immediately recognizable to the American public and have acquired immense goodwill and fame.

47.     Boy Scouts enforces its rights under its SCOUT Marks to protect the valuable rights and excellent reputation and goodwill that Boy Scouts has worked so hard to achieve and to prevent public confusion.

48.     Boy Scouts has used its SCOUT Marks in commerce in the United States and abroad since long before Defendants' unauthorized use of the Infringing Mark, names, domain

---

[5] A narrow exception may exist for marks used and owned by the Girl Scouts of the United States of America, with which, upon information and belief, Defendants have no affiliation, authorization or connection.

name, and other unauthorized uses.

**C.    Defendants' False Association, Unauthorized Use of Boy Scouts' Trademarks, And Wrongful Registration of the Infringing Domain Name**

49.    Upon information and belief, Defendants registered thequeerscout.com (the "Infringing Domain Name") for the purpose of displaying webpages that create a false association with Boy Scouts and Boy Scouts' goods, programs, and services.

50.    Upon information and belief, one or both Defendants are the registrant of the Infringing Domain Name.

51.    Boy Scouts had no knowledge of Defendants' registration of the Infringing Domain Name, nor did Boy Scouts give any authorization, permission, or license to use its trademarks in the Infringing Domain Name or on any associated webpages to the Defendants.

52.    The webpage for the Infringing Domain Name includes prominent use of the Infringing Mark, in standard character form, also in combination with an image of a fox, and as pictured below.



53.    The Infringing Mark is also displayed on Defendants' social media accounts on various platforms such as Facebook, Instagram, and LinkTree (the "Infringing Social Media Accounts"), shown, for instance, some also with the fox-like image, in the screenshots from Instagram and Facebook below, and in **Exhibit D**.





54.    During the Opposition Proceeding, Toro admitted to using the Infringing Domain Name and Infringing Social Media Accounts in connection with the Infringing Mark.

55.    Toro, d/b/a Out In Colombia, is displayed on the Infringing Social Media Accounts including on Instagram as shown in the screenshot above and in **Exhibit D**.

13

56.    Upon information and belief, Samuel Thomas Holdren, the sole owner of Defendants, responded to consumer reviews on at least one of the Infringing Social Media Accounts using the Infringing Mark (shown in the screenshot below and in **Exhibit E**), which creates a likelihood of confusion with Boy Scouts and the SCOUT Marks.



57.    The website associated with the Infringing Domain Name displays that it is copyrighted and all rights are reserved to Q Tours.

58.    The Infringing Mark is displayed on the webpages for the Infringing Domain Name and Infringing Social Media Accounts in connection with the advertising, promotion, and

rendering of Defendants' goods, programs, and services offered under the Infringing Mark.

59. Defendants' registration and use of the Infringing Domain Name and use of the Infringing Social Media Accounts directly infringes and dilutes Boy Scouts' famous SCOUT Marks, which have gained significant goodwill and fame throughout the United States such that the marks point uniquely and distinctly to Boy Scouts.

60. Boy Scouts has not authorized Defendants, directly or indirectly, to use the Infringing Mark in any manner, or with any image, including, without limitation, as a trade name, to indicate membership, in connection with goods and/or services, as part of the Infringing Domain Name, or on Defendants' Infringing Social Media Accounts.

**D. Defendants' Willful and Ongoing Violations of Boy Scouts' Rights**

61. Toro's Infringing Application was filed on March 7, 2023 in connection with "Entertainment services in the nature of arranging social entertainment events; Organization of social entertainment events; Conducting guided tours by boat; Conducting guided tours by automobile; Conducting guided tours of nightlife venues; Conducting guided tours of museums; Conducting guided tours of historical sites; Conducting guided tours of cultural sites; Conducting guided walking tours of a city" in International Class 041.

62. Boy Scouts has used and/or been known by its SCOUT Marks including the Registered SCOUT Marks and the Boy Scouts' Common Law Scout Marks and Identities prior to the filing date of the Infringing Application, and before any date of first use which may be claimed by the Defendants.

63. In addition to, and as part of its various programs, Boy Scouts offers various social events, tours, camping trips, social entertainment events—often through guided service projects for its members and their families; as well as offering various educational and physical activity trips and tours as part of Boy Scouts' many programs.

15

64.    Boy Scouts invites every youth to a safe, fun place to learn, explore, and grow.

65.    Boy Scouts' SCOUT Marks constitute a family of marks that include the term "SCOUT".

66.    Boy Scouts has established a valuable reputation and goodwill in the SCOUT Marks by reason of their long use, extensive promotion, sale of goods, and providing of services under the SCOUT Marks.

67.    As a result of Boy Scouts' long use and extensive marketing efforts, Boy Scouts' Scout Marks are well known, and the public has come to associate Boy Scouts with said SCOUT Marks.

68.    The Infringing Mark is substantially similar to Boy Scouts' SCOUT Marks, merely including the addition of the descriptive term QUEER to the term SCOUT.

69.    The services for which Defendants use the Infringing Mark in connection with and/or have sought for registration are similar or related to the goods, services or collective membership services for which Boy Scouts uses and/or has registered in connection with its SCOUT Marks.

70.    Defendants' use of the Infringing Mark in commerce as a trade name, the name of a social and traveling program, in association with its membership and its good and/or services, and on Defendants' website, as part of the Infringing Domain Name, and on their Infringing Social Media Accounts constitutes trademark infringement, false designation of origin, trademark dilution, and unfair competition, among others.

71.    Defendants' use of the Infringing Mark in commerce as a trade name, the name of a social and traveling program, in association with its membership and its good and/or services, and on Defendants' website, as part of the Infringing Domain Name, and on their Infringing Social

16

Media Accounts constitutes a use in commerce of highly similar reproductions or colorable imitations of Boy Scouts' SCOUT Marks, including Boy Scouts' Registered SCOUT Marks, so as to be likely to cause confusion, or to cause mistake, or to deceive.

72.    Defendants have made and continue to make use of the Infringing Mark in commerce, notwithstanding Boy Scouts' well-known and prior established rights in Boy Scouts' SCOUT Marks, with actual notice of Boy Scouts' trademark rights.

73.    Defendants knowingly created Defendants' websites associated with the Infringing Domain Name and Infringing Social Media Accounts and/or had them created on their behalf, and Defendants' websites can be seen and accessed by the consuming public in the state of Texas and throughout the United States.

74.    Upon information and belief, Defendants have made and continue to make use of the Infringing Mark in commerce, notwithstanding Boy Scouts' well-known and prior established rights in Boy Scouts' SCOUT Marks, with actual and constructive notice of Boy Scouts' federal registrations.

75.    Defendants' infringing acts are likely to cause confusion, mistake, or deception among the relevant consuming public—including the members for whom Boy Scouts' collective membership marks are displayed—as to the source or origin of Defendants' services and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services are associated, affiliated with, sponsored by, or are otherwise authorized by Boy Scouts.

76.    Defendants' use of The Infringing Mark in commerce has diluted Boy Scouts' famous SCOUT Marks by impairing the ability of Boy Scouts' SCOUT Marks to distinguish Boy Scouts' goods, programs, and services from others, and it continues to do so.

77.    Defendants' use of the Infringing Mark in connection with the Infringing Domain

Name, and on the websites associated with the Infringing Domain Name and Infringing Social Media Accounts dilutes the distinctive qualities of Plaintiff's famous SCOUT Marks, which were famous and incontestable for decades before Defendants' first use of the Infringing Mark.

78. Defendants' acts are willful with the intent to trade on the goodwill, distinction and reputation of Boy Scouts and its SCOUT Marks, cause confusion, mistake or deception in the marketplace, and create a false association between Defendants and Boy Scouts.

79. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Boy Scouts and to its valuable reputation and goodwill with the consuming public for which Boy Scouts has no adequate remedy at law.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER SECTION 32(a) OF THE LANHAM ACT, 15 U.S.C. § 1114(a)

80. Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

81. Boy Scouts is the sole, exclusive owner of Boy Scouts' Registered SCOUT Marks.

82. Boy Scouts' Registered SCOUT Marks, as used in connection with Boy Scouts' collective memberships, goods and services, are inherently distinctive and/or have acquired secondary meaning.

83. Indeed, all of Boy Scouts' Registered SCOUT Marks are incontestable (except for SCOUTING WIRE (Reg. No. 7292723), SCOUT LIFE (Reg. No. 6931278), SCOUTS BSA (Reg. No. 6957841), and SCOUTS BSA (Reg. No.7626600)).

84. By virtue of its ownership of Boy Scouts' Registered SCOUT Marks, Boy Scouts has the sole and exclusive right to use Boy Scouts' Registered SCOUT Marks in commerce on and in connection with the goods, services, and memberships recited in the registrations for Boy Scouts' Registered SCOUT Marks.

18

85.    Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts incorporate the term "SCOUT" which is identical or confusingly similar to the famous and distinctive terms "SCOUT," "SCOUTS," and "SCOUTING" used in the Boy Scouts' Registered SCOUT Marks.

86.    Defendants have used and are using the Infringing Mark as a trade name and in connection with goods and/or services that are similar and/or related to those that Boy Scouts offers.

87.    Further, the programs, membership, goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in similar trade channels.

88.    Boy Scouts has not authorized, directly or indirectly, Defendants' use of the Infringing Mark, the Infringing Domain Name, the Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

89.    Defendants' infringing activities have been without Boy Scouts' consent.

90.    Boy Scouts does not have the ability to control the nature and/or quality of Defendants' goods or services offered under the Infringing Mark, or on the webpages for the Infringing Domain Name and Infringing Social Media Accounts.

91.    Defendants' unauthorized use of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts are likely to cause confusion, cause mistake or to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' programs, goods and/or services.

92.    Defendants' unauthorized use of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts is likely to cause consumers to mistake, deceive or confuse, contrary to fact, that Defendants' websites, social media, goods and/or services are sold, provided,

authorized, endorsed, or sponsored by Boy Scouts, or that Defendants are in some way affiliated with or sponsored by Boy Scouts, when they are not.

93.    Defendants' unauthorized use constitutes federal trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

94.    Defendants have committed the foregoing acts of infringement with full knowledge of Boy Scouts' prior rights in Boy Scouts' Registered SCOUT Marks and with the willful intent to cause confusion, to cause mistake, or to deceive and to trade off on Boy Scouts' goodwill and reputation.

95.    Defendants' actions are "exceptional" under 15 U.S.C. § 1117.

96.    Defendants' conduct is causing immediate and irreparable harm and injury to Boy Scouts, and to its goodwill and reputation, and will continue to both damage Boy Scouts and confuse the public unless enjoined by the Court. Boy Scouts has no adequate remedy at law.

97.    Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs under Section 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

98.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

99.    Boy Scouts is the rightful and sole owner of Boy Scouts' Common Law Scout Marks.

100.    Boy Scouts has continuously used Boy Scouts' Common Law Scout Marks in connection with its names, programs, membership, goods and services since long before any first

20

use date that Defendants can claim for the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts.

101. Boy Scouts has continuously used Boy Scouts' Common Law Scout Marks in interstate commerce in connection with its names, programs, membership, goods and services since long before any first use date that Defendants can claim for the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts.

102. By virtue of its earlier use of Boy Scouts' Common Law Scout Marks, Boy Scouts owns earlier unregistered rights in Boy Scouts' Common Law Scout Marks and is the senior user of Boy Scouts' Common Law Scout Marks.

103. Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts incorporate the term "SCOUT" which is identical or confusingly similar to the famous and distinctive terms "SCOUT," "SCOUTS," and "SCOUTING" in the Boy Scouts' Common Law Scout Marks.

104. Defendants have used and are continuing to use the Infringing Mark as a trade name and in connection with providing goods and/or services that are identical and/or highly similar to those that Boy Scouts offers.

105. Defendants have used and are continuing to use the Infringing Mark often in combination with symbols, designs, and images, including the fox image, in commerce, including by advertising, displaying and promoting a website that impermissibly creates an association, affiliation and connection to Boy Scouts.

106. Further, the goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in identical and/or highly similar trade channels .

107. Boy Scouts has not authorized, directly or indirectly, Defendants' use of the

21

Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

108.    Defendants' infringing activities have been without Boy Scouts' consent.

109.    Boy Scouts does not have the ability to control the nature and/or quality of Defendants' goods or services offered under the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts

110.    Defendants' unauthorized use in commerce of the Infringing Mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' websites, social media accounts, programs, and/or goods and services.

111.    Defendants' unauthorized use in commerce of the Infringing Mark is likely to cause consumers to mistake, deceive or confuse, contrary to fact, that Defendants' websites, social media accounts, goods and services are sold, provided, authorized, endorsed, or sponsored by Boy Scouts, or that Defendants are in some way affiliated with or sponsored by Boy Scouts, when they are not.

112.    Defendants' unauthorized use in commerce of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts as described herein constitutes use of a false designation of origin and misleading description and representation of fact.

113.    Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Boy Scouts.

114.    Defendants' conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.    Defendants' conduct is causing immediate and irreparable harm and injury to Boy Scouts, and to its goodwill and reputation, and will continue to both damage Boy Scouts and

22

confuse the public unless enjoined by this Court. Boy Scouts has no adequate remedy at law.

116.    Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## UNFAIR COMPETITION SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

117.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

118.    Boy Scouts is the rightful and sole owner of Boy Scouts' Common Law Scout Marks.

119.    Boy Scouts has continuously used Boy Scouts' Common Law Scout Marks in connection with its names, programs, membership, goods and services since long before any first use date that Defendants can claim for the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts.

120.    Boy Scouts has continuously used Boy Scouts' Common Law Scout Marks in interstate commerce in connection with its names, programs, membership, goods and services since long before any first use date that Defendants can claim for the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts

121.    By virtue of its earlier use of Boy Scouts' Common Law Scout Marks, Boy Scouts owns earlier unregistered rights in Boy Scouts' Common Law Scout Marks and is the senior user of Boy Scouts' Common Law Scout Marks.

122.    Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts incorporate the term "SCOUT" which is identical or confusingly similar to the

23

famous and distinctive terms "SCOUT," "SCOUTS," and "SCOUTING" in the Boy Scouts' Common Law Scout Marks.

123. Defendants have used and are continuing to use the Infringing Mark as a trade name and in providing goods and/or services that are identical and/or highly similar to those that Boy Scouts offers.

124. Further, the goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in identical and/or highly similar trade channels.

125. Boy Scouts has not authorized, directly or indirectly, Defendants' use of the Infringing Mark, the Infringing Domain Name, the Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

126. Defendants' infringing activities have been without Boy Scouts' consent.

127. Boy Scouts does not have the ability to control the nature and/or quality of Defendants' goods or services offered under the Infringing Mark or on the webpages for the Infringing Domain Name and Infringing Social Media Accounts.

128. Defendants' unauthorized use in commerce of the Infringing Mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' websites, goods and services.

129. Defendants' unauthorized use in commerce of the Infringing Mark is likely to cause consumers to mistake, deceive or confuse, contrary to fact, that Defendants' websites, goods and services are sold, provided, authorized, endorsed, or sponsored by Boy Scouts, or that Defendants are in some way affiliated with or sponsored by Boy Scouts, when they are not.

130. Defendants' unauthorized use in commerce of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts as described herein constitutes use of a false

designation of origin and misleading description and representation of fact.

131.    Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Boy Scouts.

132.    Defendants' conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

133.    Defendants' conduct is causing immediate and irreparable harm and injury to Boy Scouts, and to its goodwill and reputation, and will continue to both damage Boy Scouts and confuse the public unless enjoined by this Court. Boy Scouts has no adequate remedy at law.

134.    Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT IV
## TRADEMARK DILUTION UNDER SECTION 43(c) OF THE LANHAM ACT, 15 U.S.C. § 1125(c)

135.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

136.    Boy Scouts' SCOUT Marks are strong, incontestable, and distinctive marks that have achieved notoriety and widespread public recognition and are, thus, "famous" within the meaning of the Lanham Act.

137.    Boy Scouts' SCOUT Marks became famous long before any first use date Defendants can claim in connection with the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts.

138.    Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social

25

Media Accounts incorporate the term "SCOUT" which is identical or confusingly similar to the famous and distinctive terms "SCOUT," "SCOUTS," and "SCOUTING" in the Boy Scouts' SCOUT Marks.

139.    Defendants have used and are continuing to use the Infringing Mark as a trade name and in goods and/or services that are identical and/or highly similar to those that Boy Scouts offers.

140.    Further, the goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in identical and/or similar trade.

141.    Boy Scouts has not authorized, directly or indirectly, Defendants' use of the Infringing Mark, the Infringing Domain Name, the Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

142.    Defendants' infringing activities have been without Boy Scouts' consent.

143.    Boy Scouts does not have the ability to control the nature and/or quality of Defendants' goods or services offered under the Infringing Mark, or on the webpages for the Infringing Domain Name and Infringing Social Media Accounts.

144.    Defendants have used and are continuing to use the Infringing Mark which dilutes and is likely to dilute the distinctiveness of Boy Scouts' SCOUT Marks by eroding the public's exclusive association of the SCOUT Marks with Boy Scouts, degrading the positive associations and prestigious connotations of Boy Scouts' SCOUT Marks, and otherwise lessening the capacity of the SCOUT Marks to identify and distinguish Boy Scouts' goods, programs, and/or services from those of others.

145.    Defendants' unlawful actions, as described herein, began decades after Boy Scouts' SCOUT Marks became famous and incontestable.

146.    Upon information and belief, Defendants acted knowingly, deliberately, and

willfully with the intent to trade on Boy Scouts' goodwill and reputation, and to dilute Boy Scouts' rights in the SCOUT Marks. Defendants' conduct is willful, wanton, and egregious.

147. Defendants' conduct constitutes federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

148. Defendants' conduct is causing immediate and irreparable harm and injury to Boy Scouts, and to its goodwill and reputation, and will continue to both damage Boy Scouts and confuse the public unless enjoined by this Court. Boy Scouts has no adequate remedy at law.

149. Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT V
## VIOLATION OF 36 U.S.C. § 30905

150. Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

151. In enacting 36 U.S.C. § 30905 (and its preceding clause in Pub. L. 64-94), the U.S. Congress granted Boy Scouts "the exclusive right to use emblems, badges, descriptive or designating marks, and words or phrases" that it adopts.

152. Defendants' use in commerce of the Infringing Mark, Boy Scouts' SCOUT Marks, names, phrases and other designations in connection with the Infringing Domain Name, on the websites associated with the Infringing Domain Name, the Infringing Social Media Accounts and in connection with Defendants' claimed goods and services violates Boy Scouts' exclusive right to use its "emblems, badges, descriptive or designating marks, and words or phrases" as set forth in 36 U.S.C. § 30905, including the right to use its family of SCOUT Marks.

27

153.    Defendants' wrongful activities have caused, and will continue to cause, irreparable damage to Boy Scouts unless such activities are enjoined by this Court.

154.    Boy Scouts has no adequate remedy at law.

155.    The Court should accordingly determine that Boy Scouts has exclusive rights to its protected marks

## COUNT VI
## UNFAIR COMPETITION UNDER TEXAS BUSINESS AND COMMERCE CODE §17.46

156.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

157.    Defendants have used, and continue to use, the Infringing Mark in commerce in Texas and throughout the United States through, among other things, the Infringing Domain Name, Defendants' websites, and the Infringing Social Media Accounts.

158.    Defendants' actions constitute false, misleading, or deceptive acts or practices, including, but not limited to: (a) passing off Defendants' websites, goods and/or services as those of Boy Scouts; (b) causing confusion or misunderstanding as to the source of Defendants' websites, goods and/or services, and the sponsorship, approval, or certification of its websites, goods and/or services by Boy Scouts; and/or (c) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, Boy Scouts.

159.    Defendants' wrongful activities have been willful and intentional.

160.    Defendants' wrongful activities have and will continue to cause irreparable damage to Boy Scouts, its business reputation and the goodwill associated with Boy Scouts' SCOUT Marks unless such activities are enjoined by this Court. Boy Scouts has no adequate remedy at law.

161.    Boy Scouts is entitled to, among other relief, an award of economic damages, reasonable attorneys' fees, and costs.

## COUNT VII
## TRADEMARK DILUTION UNDER TEXAS BUSINESS & COMMERCE CODE § 16.29

162.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

163.    Boy Scouts' SCOUT Marks constitute famous marks in the state of Texas under Section 16.103 of the Texas Business and Commerce Code, and Boy Scouts' SCOUT Marks became famous before the commencement of Defendants' infringing activities.

164.    Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts incorporate the term "SCOUT" which is identical or confusing similar to the famous and distinctive terms "SCOUT," "SCOUTS," and/or "SCOUTING" used in the Boy Scouts' SCOUT Marks.

165.    Defendants have used and are continuing to use the Infringing Mark as a trade name and in providing goods and/or services that are similar and/or related to those that Boy Scouts offers.

166.    Further, the goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in identical and/or similar trade channels.

167.    Boy Scouts has not authorized, directly or indirectly, Defendants' use of the Infringing Mark, the Infringing Domain Name, the Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

168.    Defendants' infringing activities have been without Boy Scouts' consent.

169.    Boy Scouts does not have the ability to control the nature and/or quality of Defendants' goods or services offered under the Infringing Mark, or on the webpages for the Infringing Domain Name and the Infringing Social Media Accounts.

170.    Defendants' unauthorized use in commerce of the Infringing Mark, Infringing

29

Domain Name, and Infringing Social Media Accounts is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' websites, goods, and/or services.

171.    Defendants' unauthorized use in commerce of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts is likely to cause consumers to mistake, deceive or confuse, contrary to fact, that Defendants' websites, goods, and/or services are sold, provided, authorized, endorsed, or sponsored by Boy Scouts, or that Defendants are in some way affiliated with or sponsored by Boy Scouts, when they are not.

172.    Defendants' activities dilute the distinctive quality of Boy Scouts' SCOUT Marks in violation of Section 16.103.

173.    Defendants' wrongful activities have caused, and unless enjoined by this Court, will continue to cause, irreparable injury and other damages to Boy Scouts' business, reputation and goodwill in Boy Scouts' SCOUT Marks, symbols and designs. Boy Scouts has no adequate remedy at law.

174.    Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under at least Tex. Bus. & Com. Code § 16.04.

**COUNT VIII**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

175.    Boy Scouts realleges and incorporates each and every allegation in paragraphs 1-79 above as if they were fully set forth herein.

176.    The aforementioned acts of Defendants constitute trademark infringement and unfair competition in violation of the common law of the state of Texas.

177.    Defendants' actions were and are willful, knowing, and intended to cause confusion, to cause mistake, or to deceive.

30

178.    Defendants' infringing conduct has allowed Defendants to wrongfully profit, has injured Boy Scouts in an amount to be determined at trial, and has caused and threatens to cause irreparable injury to Boy Scouts, its goodwill, and reputation, for which Boy Scouts has no adequate remedy at law.

179.    Defendants' conduct will continue to both damage Boy Scouts and confuse the public unless the Court enjoins it.

180.    Boy Scouts owns all rights, title, and interest in and to Boy Scouts' SCOUT Marks, including, but not limited to all registered and unregistered rights in such marks, due to Boy Scouts' earlier use of Boy Scouts' SCOUT Marks in this judicial district and throughout the United States.

181.    Defendants' Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts incorporate the term "SCOUT" which is identical or confusingly similar to the famous and distinctive terms "SCOUT," "SCOUTS," and "SCOUTING" in the Boy Scouts' SCOUT Marks.

182.    Defendants have used and are continuing to use the Infringing Mark as a trade name and in providing goods and/or services that are similar and/or related to those that Boy Scouts offers.

183.    Further, the goods and/or services that the parties' market, offer, sell and/or provide under their respective marks travel in identical and/or similar trade channels.

184.    Boy Scouts has not authorized, directly or indirectly, Defendants' use of the Infringing Mark, the Infringing Domain Name, the Infringing Social Media Accounts, or any other mark incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING" in any manner.

185.    Defendants' infringing activities have been without Boy Scouts' consent.

186.    Boy Scouts does not have the ability to control the nature and/or quality of

Defendants' goods or services offered under the Infringing Mark, or on the webpages for the Infringing Domain Name and Infringing Social Media Accounts.

187. Boy Scouts has not authorized Defendants to use Boy Scouts' SCOUT Marks, or any other mark, trade name, or domain name incorporating the terms "SCOUT," "SCOUTS," or "SCOUTING."

188. Defendants' unauthorized use of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' websites, goods, and/or services.

189. Defendants' unauthorized use of the Infringing Mark, Infringing Domain Name, and Infringing Social Media Accounts is likely to cause consumers to mistake, deceive or confuse, contrary to fact, that Defendants' websites, goods, and/or services are sold, authorized, endorsed, or sponsored by Boy Scouts, or that Defendants are in some way affiliated with or sponsored by Boy Scouts, when they are not.

190. Defendants' conduct was and is malicious and wanton and Boy Scouts is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages, punitive damages, reasonable attorneys' fees, and costs of the action under Texas common law, together with prejudgment and post-judgment interest.

## JURY TRIAL DEMANDED

Boy Scouts demands a trial by jury as to all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Boy Scouts respectfully requests that this Court enter judgment in its favor and against Defendants, as follows:

A. Finding that Defendants' activities are unlawful under Federal and Texas law, and entering judgment for Boy Scouts and against Defendants on Counts I-VIII, inclusive;

32

B.    Preliminarily and permanently enjoining Defendants, any entity that they control, their predecessors, successors, assigns, divisions, subsidiaries, and joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representative, and those acting in privity or concert with them or on their behalf, from directly or indirectly using on or in connection with names, memberships, programs, websites, goods and/or services, or any other designation: (i) the Infringing Mark; (ii) the Infringing Social Media Accounts; (iii) the Infringing Domain Name; (iv) any marks comprised of or including the terms "SCOUT," "SCOUTS," or "SCOUTING," regardless of stylization or design; (v) any marks confusingly similar to Boy Scouts' SCOUT Marks, regardless of stylization or design; and (vi) any domain name or social media handle comprised of or including the terms "SCOUT," "SCOUTS," or "SCOUTING" or any other term confusingly similar to Boy Scouts' SCOUT Marks;

C.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any products or services manufactured, sold, distributed, supplied, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Boy Scouts or constitute or are connected with Boy Scouts' goods and/or services;

D.    Directing, under Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Boy Scouts' counsel within thirty (30) days after the service on Defendants of an injunction, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

33

E.      Declaring that Defendants willfully violated Boy Scouts' rights;

F.      Award Boy Scouts its actual damages against Defendants in an amount to be determined at trial;

G.      Awarding Boy Scouts an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

H.      Award Boy Scouts with Defendants' profits from their aforementioned activities;

I.      Award Boy Scouts with punitive damages against Defendants;

J.      Award Boy Scouts with statutory damages;

K.      Declaring that this is an exceptional case under Section 35(a) of the Lanham Act and awarding Boy Scouts of its costs and reasonable attorneys' fees in this action under 15 U.S.C. § 1117(a), and any other applicable laws;

L.      Award Boy Scouts with pre- and post-judgment interest at the maximum legal rate and costs;

M.      Award Boy Scouts an accounting for damages and for all the profits together with those profits lost by Boy Scouts due to Defendants' misconduct alleged herein; and

N.      Grant such other and further relief as the Court deems just and proper.

Dated: February 25, 2026                              Respectfully submitted,


                                    By:    /s/ Adam Wolek
                                           Adam Wolek (Bar No. 6301207)
                                           Fox Rothschild LLP
                                           777 South Flagler Drive
                                           Suite 1700, West Tower
                                           West Palm Beach, FL 33401
                                           Phone: (561) 835-9600
                                           Fax: (561) 835-9602
                                           awolek@foxrothschild.com

Andy Nikolopoulos (Bar No. 24044852)
2501 North Harwood Street, Suite 1800
Dallas, TX 75201
Phone: (972) 991-9880
Fax: (972) 404-0516
anikolopoulous@foxrothschild.com

Gary A. Hecht (*pro hac vice* forthcoming)
Fox Rothschild LLP
Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Phone: (215) 299-2000
Fax: (215) 299-2150
ghecht@foxrothschild.com

Clarissa Sullivan (*pro hac vice* forthcoming)
Fox Rothschild LLP
101 S. Tryon Street, Suite 1700
Charlotte, NC 28280
Phone: (704) 384-2600
Fax: (704) 384-2800
csullivan@foxrothschild.com


*Counsel for Plaintiff*
*Boy Scouts of America*